IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Cassius Quamaine Norfleet, <br> Petitioner, <br><br> v. <br><br> Bernard Booker, <br> Respondent. | ) <br> ) <br> ) <br> )     1:18cv1168 (LO/IDD) <br> ) <br> ) <br> ) |

MEMORANDUM OPINION

Cassius Quamaine Norfleet, a Virginia inmate proceeding pro se, has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Dkt. No. 1]. He challenges his convictions entered in the Circuit Court of the City of Suffolk. Respondent Warden Bernard Booker filed a Motion to Dismiss and Rule 5 Answer, along with a supporting brief. [Dkt. Nos. 11-13]. Norfleet was notified of his ability to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(k), and he has not done so. For the reasons that follow, respondent's Motion to Dismiss is granted.

I. Background

On December 17, 2012, Norfleet and his codefendants, Michael Eason and Akeem Lassiter, hatched a plan to steal drugs from William Kendale Jordan. Rec. No. 1456-15-1. Together, they drove to Jordan's residence. Id. Norfleet, armed with a pistol, forced his way into Jordan's garage. Id. There, he encountered Jordan, and the two exchanged gunfire. Id. Jordan later died from a gunshot wound to the torso. Id. Eason and Lassiter later pleaded guilty and testified against Norfleet. Id.

After a jury trial, Norfleet was convicted on April 1, 2015 of eight crimes: first degree murder, VA. CODE ANN. §§ 18.2-30, 18.2-32; attempted robbery, Id. §§ 18.2-58, 18.2-26;

1

statutory burglary while armed, Id. § 18.2-90; using a firearm during the commission of each of those three felonies, Id. § 18.2-53.1; conspiracy to commit robbery, Id. §§ 18.2-58, 18.2-22; and unlawfully wounding another during the commission of, or attempt to commit, a felony, Id. § 18.2-53. Norfleet's combined sentences, to be served consecutively, total 57 years' imprisonment.

On direct appeal, the Court of Appeals of Virginia considered and rejected Norfleet's contention that there was insufficient evidence to support the guilty verdicts in an order dated April 21, 2016. Rec. No. 1456-15-1. The Supreme Court of Virginia refused the petition for appeal on January 12, 2017. Rec. No. 160807.

Norfleet then filed a state petition for a writ of habeas corpus, which the Supreme Court of Virginia received on November 29, 2017. Norfleet asserted that his trial counsel was ineffective on fourteen grounds. He also claimed actual innocence based on an affidavit in which Eason recants his trial testimony implicating Norfleet in the murder. The Supreme Court of Virginia rejected all of his claims on August 6, 2018. Rec. No. 171582.

Now Norfleet petitions this court under § 2254. [Dkt. No. 1]. He reiterates the contentions he raised on direct appeal and in his state habeas proceedings.

## II. Standard of Review

When a state court has adjudicated a petitioner's claim on the merits, this Court may grant a petition for a writ of habeas corpus under 28 U.S.C. § 2254 only if the state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

2

When § 2254(d) applies, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017) (internal quotation marks and citation omitted). Norfleet thus faces an uphill battle in making this showing. See, e.g., Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (stating that the standard established in § 2254(d) is "intentionally difficult to meet") (internal quotation marks and citations omitted); Warren v. Thomas, 894 F.3d 609, 613 (4th Cir. 2018) (characterizing § 2254(d)'s standard as a "high bar").

### III. Analysis

### III.A. Ineffective Assistance of Counsel

Norfleet's fourteen claims of ineffective assistance of counsel may be grouped into four categories of alleged deficiencies. First, he faults counsel for not making objections during the prosecution's opening and closing statements (claims 5-7, 12-15). Second, he makes several charges related to counsel's handling of evidentiary objections (claims 8-11). Third, Norfleet contends that counsel was constitutionally deficient at sentencing by failing to move to set aside his conviction (claim 2). And fourth, Norfleet alleges that counsel was unprepared to represent him (claims 3-4). Each category will be addressed in turn.

This Court evaluates claims of ineffective assistance of counsel under the two-factor test established in Strickland v. Washington, 466 U.S. 668 (1984). See Grueninger v. Dir. Va. Dep't of Corr., 813 F.3d 517, 524 (4th Cir. 2016). Under Strickland Norfleet must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the outcome of his trial. See Garza v. Idaho, 139 S. Ct. 738, 744 (2019); Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016). An attorney's performance is deficient if it "'fell below an

objective standard of reasonableness' measured by 'prevailing professional norms.'" Christian v. Ballard, 792 F.3d 427, 443 (4th Cir. 2015) (quoting Strickland, 466 U.S. at 688). And "there is a 'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). All told, Strickland adds a second layer of deference to § 2254(d)'s already exceptionally deferential standard of review. See Harrington v. Richter, 562 U.S. 86, 105 (2011) ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotation marks and citations omitted).

i.

As noted above, Norfleet finds constitutional fault with counsel's failure to object several times during the Commonwealth's opening and closing statements. Norfleet first argues that the prosecutor made three unduly prejudicial statements that were "designed to inflame the passions and prejudices of the jury." [Dkt. No. 1]. For instance, Norfleet relates that the prosecutor opened its case-in-chief by stating this to the jury: "Rather than celebrating her second Christmas with her father, a two-year-old little girl was instead attending his funeral." Trial Tr. at 124-25. During closing arguments, Norfleet adds, the prosecutor declared, "You cannot bring [Jordan] back from the dead, none of us can. But what you can do is give a mother and father justice, a sister justice, an aunt justice for the murder of their family member." Id. at 655. During closing the prosecutor also reminded the jury of evidence showing "that little pink car" in the garage where Jordan was shot. Id. at 606.

The Supreme Court of Virginia rejected each of Norfleet's claims concerning counsel's response to supposed prejudicial remarks during opening and closing statements. Rec. No.

4

171582. Concerning the prosecutor's opening remark, the court concluded that counsel reasonably could have decided that objecting would have drawn the jury's attention even further to the loss suffered by the victim's young daughter. Id. Turning to the prosecutor's closing statement about justice for Jordan's family, the court pointed to the very next words the prosecutor uttered, urging the jury to hold Norfleet accountable "[n]ot because I ask you to, but because the evidence supports those convictions." Id. (quoting Trial Tr. at 655). The court concluded that counsel reasonably could have interpreted the prosecutor's statement, "taken in context," as asking the jury to return a guilty verdict when, as the Commonwealth averred, the state had proven Norfleet's guilt beyond a reasonable doubt. Id. Moreover, the court concluded, the evidence of Norfleet's guilt was overwhelming, and so "there is no reasonable probability that, had counsel successfully objected to the prosecutor's argument, it would have altered the jury's verdict." Id. Finally, as for the closing remark in which the prosecutor mentioned the child's toy in the garage, the court found that this comment was made while discussing co-defendant Lassiter's relationship to the victim's family. Id. The court reasoned that counsel could have reasonably viewed that comment as a reminder to the jury of Lassiter's "culpability in the crimes and motivation for testifying, and that it was properly based on evidence at trial." Id.

Norfleet also contends that counsel failed to object when, during closing, the prosecution inappropriately tried to bolster Lassiter and Eason's credibility. [Dkt. No. 1]. At one point while discussing Eason's testimony, the prosecutor stated that Eason "didn't lie about anything." Trial Tr. at 608. The Commonwealth also mentioned Eason and Lassiter's plea agreements, commenting that they each "made an agreement to be truthful and cooperate against any codefendant." Id. at 609. But the transcript revealed, the court found, that when the prosecutor said Eason didn't lie, he was referring to Eason making self-incriminating statements. Rec. No.

5

171582. Thus, the court concluded that counsel could have reasonably determined that the prosecutor was not attempting to bolster Eason's credibility. Id. As for the plea agreements, the court concluded that, because they had been admitted into evidence, counsel reasonably could have determined that the prosecutor's statement was based on evidence and not improper bolstering. Id.

Norfleet further argues that the prosecution made misstatements during closing, and that counsel's failure to object constituted deficient performance. [Dkt. No. 1]. He asserts that the prosecutor quoted Lassiter[1] as testifying that Norfleet said, "I had to shoot him," when no witness so testified. But the court found that Lassiter's, as well as Eason's, broader testimony as to what Norfleet told them about the shooting could be summarized as follows:

> At trial, Lassiter testified that petitioner told him he tried to rob Jordan but he "slipped and fell" and Jordan began firing at him. He told Lassiter he shot back at Jordan, but he did not know if he had hit him. Petitioner also told Lassiter that Eason fled around the corner of the house during the encounter with Jordan. Eason testified that he saw petitioner, gun in hand, try to force the door open after Jordan answered it, telling the victim give it up, but that petitioner tripped as he was entering the garage. Immediately after that, Eason heard "gunfire exchanged." Eason testified petitioner said that when he tripped, Jordan grabbed a gun and shot it and that petitioner shot back at him.

Rec. No. 171582. Noting this broader context, the court concluded that counsel reasonably could have determined that the prosecutor did not intend to quote either co-defendant but, instead, to summarize the encounter in the garage. Id.

Norfleet also asserts that the prosecutor misstated the charging instructions to the jury, and again, that counsel's failure to object constituted deficient performance. [Dkt. No. 1]. In particular, Norfleet argues that the prosecutor proclaimed that the instructions tell the jury to find

---

[1] Norfleet identifies the prosecutor's statement as describing Eason's testimony. The transcript shows, however, that the prosecutor actually was describing Lassiter's testimony. Trial Tr. at 646.

Norfleet guilty if "you believe all the consistencies that Mike Eason and Akeem Lassiter have given you." [Dkt. No. 1 (quoting Trial Tr. at 649-500)]. But the court found that the record demonstrated that counsel merely told the jury to evaluate the truthfulness of the prosecution's witnesses before turning to the elements of the offense. Rec. No. 171582. Thus, the court concluded, there was no reason for counsel to object to the prosecutor's statement. Id.

Finally, Norfleet argues that counsel should have objected when, during closing, the prosecutor said "we know" when referring to witness testimony and Norfleet's guilt. [Dkt. No. 1]. This phrasing was objectionable because, Norfleet contends, the prosecutor had wrongly expressed his personal belief about the defendant's guilt. The court rejected this claim, concluding that counsel reasonably could have determined that the prosecutor was "fairly arguing what the evidence established and was not improperly assuring the jury the evidence was true." Rec. No. 171582.

The Supreme Court of Virginia did not unreasonably apply Strickland in concluding that Norfleet's attorney did not provide constitutionally deficient assistance of counsel by failing to make any of the objections during opening or closing remarks that Norfleet identifies in his petition. "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105. And the state habeas court's arguments for why counsel satisfied Strickland are, indeed, reasonable.

ii.

The next batch of ineffective-assistance claims involve more protestations about counsel's failure to make objections. These claims are directed at forgone objections during the prosecution's questioning of witness. [Dkt. No. 1]. First, Norfleet contends that counsel should

7

have objected when the prosecutor asked leading questions. Second, he argues that counsel should have objected to questions that had been asked and answered. Third, he asserts that counsel failed to object timely to the prosecutor describing the evidence to a witness. Relatedly, for numerous objections made by the prosecutor and defense counsel, Norfleet faults counsel for failing to ask for a curative instruction telling the jury to ignore the evidence they heard before the objection.

The state habeas court rejected each of these claims alleging ineffective assistance of counsel. For the leading questions, the court explained that Norfleet failed to divulge the specific questions counsel should have objected to, and what testimony the prosecutor elicited through those leading questions that the state would not have otherwise obtained through proper questioning. Rec. No. 171582. Concerning the asked-and-answered questions, the court found that Norfleet failed to explain how any of the evidence was "needlessly cumulative" such that it warranted an objection. Id. For the timely objection claim, the court concluded that Norfleet neglected to allege that counsel's failure to object to the prosecutor describing to a crime scene technician the content of a photograph would have led to the admission of evidence that the witness would not have given had the photograph not been described. Id. Finally, concerning counsel's alleged failure to ask for a curative instruction related to the objections, the court found that Norfleet failed to offer any basis for which counsel could have requested a curative instruction, and so Norfleet could not demonstrate deficient performance or prejudice. Id.

This Court will not second-guess the "on-the-fly decisions" of Norfleet's counsel while the prosecutor questioned witnesses. See Humphries v. Ozmint, 397 F.3d 206, 234 (4th Cir. 2005) (Luttig, J., concurring) (citing Strickland, 466 U.S. 668 (1984)). Moreover, the Supreme Court of Virginia's assessment of counsel's decision not to object "must be granted a deference

and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101.

### iii.

Norfleet also contends that counsel was ineffective because he did not move to set aside Norfleet's conviction at sentencing. [Dkt. No. 1]. Norfleet points out that, during the sentencing hearing, the trial judge said, "I don't think the evidence was beyond a reasonable doubt." Sent. Tr. at 38. At that point, Norfleet says, counsel should have moved for the verdict to be set aside. The Supreme Court of Virginia rejected this claim based on the trial judge's complete soliloquy in which that statement appeared:

> Mr. Norfleet continues . . . to maintain his innocence. I heard the evidence along with the jury. I don't think the evidence was beyond a reasonable doubt. I think there is **no doubt** that Mr. Norfleet went there that evening with others. Mr. Norfleet carried a firearm. **Mr. Norfleet killed that man. There is no doubt in my mind that's what happened**, Mr. Norfleet.

Rec. No. 171582 (citing Sent. Tr. at 38) (emphasis added). Further, the Supreme Court of Virginia noted that, at the close of evidence, the trial judge denied counsel's motion to strike the charges on the ground that the Commonwealth had offered evidence meeting the elements of the offense. Id. When reading the trial judge's statement in context, the Supreme Court of Virginia concluded that counsel reasonably could have decided the trial judge misspoke, leaving no basis to request Norfleet's conviction to be set aside. Id.

Norfleet has not demonstrated that the Supreme Court of Virginia unreasonably applied Strickland when assessing counsel's response to the trial judge's commentary about the evidence. The trial judge's comment, in which he stated he was convinced of Norfleet's guilt, renders the state court's determination reasonable.

### iv.

Norfleet's final claims of ineffective assistance allege that counsel was unprepared to represent him and should have moved to withdraw as his attorney. [Dkt. No. 1]. First, Norfleet points to testimony that, in his view, demonstrates counsel acknowledging his deficiencies. Counsel stated, for instance, "I am totally out of my element here," Trial Tr. at 174, and that "I am reminded every day of my many shortcomings," Id. at 614. Norfleet also asserts that counsel conceded that he "allowed some objections to slip by him," [Dkt. No. 1], and that he "did not expect the best evidence issue in this case," Trial Tr. at 400.

The Supreme Court of Virginia concluded that none of the identified statements demonstrate ineffective assistance. The court found that when counsel stated he was "out of his element," he was referring to using certain courtroom equipment, not to his ability to represent Norfleet. Rec. No. 171582. Nor, the court added, did Norfleet allege prejudice stemming from counsel being ill-equipped to use that technology. Id. The court also found that counsel acknowledged his "shortcomings" during closing when he thanked the jury for their patience with him during trial. Id. The court concluded that this statement neither suggested to the jury that his representation had been deficient, nor conceded that he had committed any errors while representing Norfleet. Id. Thus, the court opined that there was no basis for finding counsel ineffective based on that closing remark. Id. As for the supposed concession about missing objections, the court rejected that contention too. The court noted that counsel objected when testimony appeared to be heading towards hearsay and, in doing so, stated that he "let . . . go" objecting to the witness's one-word answer to the prosecutor's question, waiting to object until the witness began elaborating. Id. (quoting Trial Tr. at 270). With that context, the court concluded that "[c]ounsel did not concede he missed an objection to the question, that the question expressly elicited hearsay, or that the witness's testimony contained hearsay," and thus

10

Norfleet did not show any deficient performance. Id. Finally, concerning the best evidence rule, the court concluded that the prosecutor correctly argued why the best evidence rule did not apply and that Norfleet offered no additional arguments counsel could have made to negate the prosecutor's argument, like that the document had been destroyed in bad faith. Id.

The Supreme Court of Virginia offered a "reasonable argument that counsel satisfied Strickland's deferential standard" when evaluating counsel's off-hand statements. See Harrington, 562 U.S. at 105. The court assessed counsel's remarks in context and reasonably determined that the statements did not demonstrate constitutionally deficient performance.

### III.B. Sufficiency of the Evidence

Norfleet challenges the sufficiency of the evidence underlying his convictions (claim 1). He attacks the prosecution's witnesses as wholly unbelievable and argues that once their testimony is discounted, there is insufficient evidence to support the guilty verdicts. [Dkt. No. 1]. To support his argument, Norfleet points to minor inconsistencies in the testimony of the Commonwealth's witnesses. On direct appeal, the Court of Appeals of Virginia concluded that Norfleet failed to meet the heavy burden required to overturn a jury's assessment of witness credibility. Rec. No. 1456-15-1. The appellate court reasoned, for instance, that Eason and Lassiter admitted their involvement in the crimes and provided "a largely consistent account of the events," including that Norfleet shot Jordan. Id. The court thus concluded that the Commonwealth's evidence was not "inherently incredible" and, once accepted by the jury, sufficient to prove guilt beyond a reasonable doubt. Id.

To obtain a writ of habeas corpus based on insufficiency of the evidence, Jackson v. Virginia requires Norfleet to demonstrate that based "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443

U.S. 307, 324 (1979). This Court's inquiry focuses not on whether the jury correctly decided the case, but whether its decision was rational. See Herrera v. Collins, 506 U.S. 390, 402 (1993).

Norfleet has not met this standard. His entire claim rests on the credibility of the Commonwealth's witnesses. But this Court may not "test the credibility of the witnesses that established guilt beyond a reasonable doubt at the state trial." See Giarratano v. Procunier, 891 F.2d 483, 487 (4th Cir. 1989); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1984) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The Court of Appeals of Virginia found that the following testimony was elicited at trial. Eason testified that he, Lassiter, and Norfleet drove to Jordan's home with the intent to rob him to obtain drugs. Rec. No. 1456-15-1. He and Norfleet walked from the car to Jordan's door. Id. Norfleet, armed with a pistol, told Jordan to "give it up." Id. Eason then heard gunfire from two different weapons, and the two ran back to the car. Id. Norfleet then said he thought that he shot Jordan. Lassiter's testimony confirmed Eason's account of Norfleet's inculpatory admissions in the car. Id. Because the Court of Appeals of Virginia did not unreasonably apply Jackson and, moreover, a rational juror could have found proof of guilt beyond a reasonable doubt based on Eason and Lassiter's testimony, Norfleet's challenge to the sufficiency of the evidence must fail.

### III.C. Actual Innocence

Lastly, Norfleet claims actual innocence of the crimes for which he was convicted (claim 16). He obtained an affidavit from Eason—dated June 7, 2016, about 6.5 weeks after Norfleet lost his direct appeal—in which Eason recants his trial testimony implicating Norfleet in Jordan's murder. [Dkt. No. 1]. Eason attests that he told the Commonwealth "whatever it took to get me and [A]keem [Lassiter] out of I'll [sic] own troubles to get a better deal." [Dkt. No. 1].

The Virginia Supreme Court rejected this claim because habeas proceedings before the Supreme Court of Virginia are an improper venue for raising actual-innocence claims. Rec. No. 171582.

There is no basis for this Court to grant a writ based on actual innocence. To the extent that freestanding actual-innocence claims are permitted, the Supreme Court has opined that federal habeas relief would be warranted only "if there were no state avenue open to process such a claim." Herrera, 506 U.S at 417. But Norfleet *does* appear to have an open avenue: He may follow the procedures outlined in Virginia Code sections 19.2327.1 to 19.2-327.6 and 19.2-327.10 to 19.2-327.14 to bring his claim before the Court of Appeals for Virginia. See Dennis v. Commonwealth, 823 S.E.2d 490, 499 (Va. 2019).

## IV. Conclusion

For the reasons outlined above, respondent's Motion to Dismiss [Dkt. No. 11] will be granted, and this petition will be dismissed with prejudice (provided that Norfleet may pursue his claim of actual innocence in the manner described above) through an Order that will issue alongside this Memorandum Opinion.

Entered this 26th day of July 2019.

Alexandria, Virginia

/s/ 
Liam O'Grady
United States District Judge